## Case No. 9,161.

### MARTIN v. DELAWARE INS. CO.

[2 Wash. C. C. 254.] [1]

Circuit Court, D. Pennsylvania.    Oct. Term, 1808.

MARINE INSURANCE—DEVIATION—JUSTIFIABLE NECESSITY—COURSE OF TRADE.

1. The smallest deviation from the usual course of the voyage, without a justifiable necessity, discharges the underwriters, although the loss was not the immediate consequence of the deviation.

[Cited in Parsons v. Manufacturers' Ins. Co., 82 Mass. (16 Gray) 465.]

2. The underwriters are bound to take notice of the course of trade; but it should appear that the course was so uniformly pursued, as that it should have been known to the underwriters, as well as to the insured.

[Cited in Bulkley v. Protection Ins. Co., Case No. 2,118.]

[Cited in Natchez Ins. Co. v. Stanton, 2 Smedes & M. 340; Crosby v. Fitch, 12 Conn. 422.]

Insurance made, on the 9th of November 1805, on one-third of the schooner Friendship, at and from Kingston, in Jamaica, to the island of Aruba, and at and from thence, back to Kingston, with liberty to touch at Rio de la Hache. On the 24th of December, a memorandum was endorsed on the policy, that, for the additional premium of a half per cent., the said vessel may take in the whole or a part of her cargo at Coro, without prejudice to the insurance; the additional premium to be returned, if she should not go to Coro. The vessel sailed on the voyage insured; stopped about eight days at Aruba; took in a person as a supra-cargo, to go to Coro, to assist in purchasing mules; then returned from Coro, with a load of mules to Aruba, where she remained a part of two days, when the island, then belonging to and in possession of the English, was attacked and taken by the Dutch. The vessel and her cargo were taken and condemned as prize. A regular abandonment was offered and refused.

The claim was opposed, by Rawle and Condy, upon the ground of deviation, in returning to and stopping at Aruba, on the voyage from Coro. Although the former is nearly in the route, from Coro, on the Spanish Main, to Jamaica, still, it was a deviation to stop there. Park, on the subject of deviation was cited; also Marsh, 393; [Hood v. Nesbit] 2 Dall. [2 U. S.] 137.

1 [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

Ingersoll & Dallas insisted, that according to the plain intention of the parties, which was to cover the voyage out and home, it was absolutely necessary to return to Aruba, as otherwise the return voyage would not be protected, either by the policy or the memorandum; the words of the former being, "at and from Aruba to Kingston." That the permission being to go to Coro "without prejudice to the insurance," and there to take in "the whole or a part" of her cargo, the insured would be prejudiced, unless he was at liberty to return to Aruba; where, probably, it might be necessary for him to take in the balance of his cargo. Besides, without this construction, he could not call at Rio de la Hache, which, by the policy, he was to do, on his way back from Aruba. It was further insisted, upon the evidence of one of the jurymen, who stated that he had known two vessels on this voyage call at Aruba, to take in a supracargo to Coro for purchasing mules, that this was the course of the trade, and therefore it was permitted to call at Aruba, to land this person.

WASHINGTON, Circuit Justice (charging jury). In this case, the vessel was lost in consequence of the stopping at Aruba; but if it had been otherwise, still, if there was the smallest deviation from the usual course of the voyage, without a justifiable necessity, the underwriters are discharged, although the loss was not the immediate or certain consequence of the deviation.

The question is, what was the voyage, as described in this policy and memorandum. In giving the contract a construction, we must attend to the intention of the parties, as far as we can discover it; and we must supply as little as possible, beyond the meaning thus ascertained. It is contended, for the plaintiff, that the vessel was obliged to return to Aruba from Coro; else, the manifest intention of the parties to cover every part of the voyage out and home, would be defeated; since, neither in the policy or memorandum, is she protected back from any other place but Aruba. But, if this argument be sound, I would ask, what part of the policy protects her from Coro to Aruba? The permission to go to Coro, would cover her voyage thither; but there are no words which extend this protection to her voyage back to Aruba. This construction, then, instead of fulfilling, would manifestly violate, the meaning of the parties; which, I admit, was to cover her throughout. The only way to effect this, is to consider Coro, substituted by the memorandum as the termination of the outward voyage, instead of Aruba, which was in the first instance the ultimate point; and then the insurance will be, at and from Kingston to Aruba, and at and from thence to Coro, and at and from thence back to Kingston. But, if the plaintiff's exposition be admitted, we must go on, and add a new voyage, not expressed in the policy or memorandum, and by no means essential to the meaning of the parties as expressed. Had she gone to Coro

without the permission, she would have committed a deviation, and the underwriters would have been discharged; but now, she is permitted to go there, so as not to prejudice the policy, the intention of which was, to cover the whole voyage. But it does not follow from this, that the insured should, though not at all necessary, and perhaps very inconvenient to him, stop at Aruba, for no other purpose than to take his departure from thence. This could not have been the intention. As to stopping at Rio de la Hache, if the construction I have given be correct, then the vessel might as safely touch there from Coro as from Aruba.

The evidence given by the juryman, is very far from proving a usage of trade. Twenty instances may have occurred, of vessels, not being otherwise provided with persons acquainted with the traffic in mules on the Main, calling there to obtain such a person; and as many instances may have occurred of vessels proceeding with a supra-cargo, brought from the port of the vessel's departure, relying upon finding such a character at Coro. But this is no proof of a usage. It should appear that this course is uniformly pursued, and that it should be known as well to the underwriters as to the insured. The former must take notice of the usage of trade, but then it must be uniform and fixed. There appears, upon the whole, to have been a deviation.

Verdict for defendants.